MARTIN BERNARD & another, trustees, *vs.* HEMISPHERE
HOTEL MANAGEMENT, INC.
(and a companion case[1]).

Middlesex.   April 13, 1983. — June 24, 1983.

Present: HALE, C.J., ARMSTRONG, KASS, JJ.

*Arbitration,* Appropriateness of judicial proceedings.

Where, during a lengthy arbitration proceeding conducted under the
   rules of the American Arbitration Association, one of the parties re-
   quested the association to remove for unfitness the chairman of the ar-
   bitral panel, it was error for a judge in the Superior Court to enter an
   order prescribing whether and upon what terms the arbitration should
   continue, as these were questions which the association, under its rules
   by which the parties had agreed to be bound, had reserved to itself.
   [262-265]
A judge acted within his discretion in denying motions by a party to an ar-
   bitration agreement for injunctive relief reinstating it as the manage-
   ment contractor of a hotel and for partial summary judgment requir-
   ing payment of a management fee into escrow, pending an arbitral
   hearing, where any grant of affirmative relief by the court would
   have, in effect, decided questions to be arbitrated. [265]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 20, 1980.

A motion to vacate an arbitration award was heard by
*Mitchell,* J.

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 30, 1981.

Motions for injunctive relief and partial summary judg-
ment were heard by *Zobel,* J., and were reported by him.

---

[1] The companion case was an action by Hemisphere Hotel Manage-
ment, Inc., against Martin Bernard and Isadore Wasserman, trustees of
the S. N. Realty Trust, and Franklin Properties, Inc.

*Arthur M. Gilman (William F. York* with him) for Martin Bernard & another.

*Richard M. Zielinski (Gilbert B. Kaplan* with him) for Hemisphere Hotel Management, Inc.

KASS, J. S. N. Realty Trust (the "trust"), of which Bernard and Isadore Wasserman are the trustees, is the owner of a 189-room hotel in Natick. The trust entered into a contract with Hemisphere Hotel Management, Inc. (Hemisphere) to manage the hotel. Dissatisfied in the extreme with Hemisphere's performance, the trust determined to discharge Hemisphere and, to that end, claimed arbitration in accordance with a clause in the management contract which required all disputes under it to be submitted to arbitration. That arbitration was to be "in accordance with the rules, then in effect, of the American Arbitration Association in the City of Boston." Well into the arbitration (after twenty hearing days) the parties discovered that the chairman of the panel, described in a biography as William J. Levanthal was William J. Leventhal (emphasis supplied), who had been convicted of larceny and who, in connection with the events that gave rise to that conviction, had embarked upon a series of legal actions so persistently vexatious that a judge of the Superior Court was moved, on December 10, 1980, to enter an order enjoining Leventhal from commencing any action or filing any further pleadings related in any way to those events. For a partial history of Leventhal's exertions in the courts, see *Leventhal* v. *American Discount Corp.,* 11 Mass. App. Ct. 959 (1981).

1. Upon discovering Leventhal's history, Hemisphere filed a motion with the American Arbitration Association (AAA) to remove Leventhal as unfit. Hemisphere's position before the AAA was that should the AAA disqualify and remove Leventhal, the arbitration was to be reheard in accordance with rule 20 of the Commercial Arbitration Rules of the AAA (1980).[2] While Hemisphere's motion

---

[2] Rule 20 provides: "VACANCIES — If any Arbitrator should resign, die, withdraw, refuse, be disqualified or be unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office

before the AAA was pending, the trust moved in the Superior Court for injunctive relief ordering the AAA to resume hearings and render a decision by the three arbitrators (i.e., including Leventhal), or the remaining two. A Superior Court judge, on April 21, 1981, entered an order that should the AAA disqualify the chairman (Leventhal), it was to "continue forthwith . . . the . . . arbitration proceedings . . . with two arbitrators, unless the [AAA] specifically finds that the former chairman . . . has so infected their opinions and decision making abilities so as to unduly bias, prejudice or result in impartiality [*sic*] towards either of the parties to said arbitration." Two days after the court's order, the AAA notified the parties by letter dated April 23, 1981, that it had determined to remove Leventhal, to reaffirm the status of the other two arbitrators, and to conclude the case with them. Arbitration resumed and the remaining arbitrators made an award terminating the management agreement and requiring Hemisphere to pay $500,000 in damages to the trust. Hemisphere moved to vacate the arbitration award and a different Superior Court judge allowed that motion.

It is apparent from the date and content of the AAA's letter of April 23, 1981, that the AAA was responsive to the April 21 order of the first Superior Court judge, i.e., that the arbitration should "continue forthwith . . . with two arbitrators." The judge's order was in error. Whether, in light of Leventhal's background and role, the arbitration was to continue was a question for the AAA to decide. If parties, as here, agree to submit all their disputes to arbitration the power of adjudication rests with the arbitrators and the scope of review is narrow. *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.*, 363 Mass. 386, 390 (1973). *Lawrence* v. *Falzarano*, 380 Mass. 18, 28 (1980). The arbitrators' power includes interpretation of

vacant. Vacancies shall be filled in accordance with the applicable provisions of these Rules and the matter shall be reheard unless the parties shall agree otherwise."

arbitration rules, *Stancioff* v. *Hertz,* 10 Mass. App. Ct. 843, 844 (1980), and "[e]ven a grossly erroneous decision is binding . . . ." *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.,* 363 Mass. at 390. See *McGovern* v. *Middlesex Mut. Ins. Co.,* 359 Mass. 443, 445 (1971). This is so unless fraud has been committed, *Greene* v. *Mari & Sons Flooring,* 362 Mass. 560, 563 (1972), because the parties have "received what they agreed to take, the honest judgment of the arbitrator as to a matter referred to him." *Phaneuf* v. *Corey,* 190 Mass. 237, 247 (1906). *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.,* 363 Mass. at 390-391. Although the opinions cited have dealt with decisions of the arbitrators, rather than the AAA, we have no difficulty deciding that the same deference is due determinations concerning the arbitration process which the AAA, under its rules, reserves to itself.

In the circumstances, the first Superior Court judge erred in dictating a resolution of the question put to the AAA: If the chairman were to be removed and a vacancy result, should the matter be reheard, as the language of rule 20 provided, unless the parties otherwise agreed? It was obvious that Hemisphere did not so agree and the second Superior Court judge acted correctly in so far as he declined to confirm the arbitration award.[3] He should not, however, have resolved the question whether rule 20 required the matter to be reheard. Although the language mandating rehearing appears plain and the temptation to declare its meaning was, doubtless, strong, that issue was, as we have said, for the arbitrators to decide. Compare *Freeport Constr. Co.* v. *Star Forge, Inc.,* 61 Ill. App. 3d 999, 1000-1001 (1978), in which the court held that it was not bound by a determination of the AAA as to whether an arbitrator should be removed because of bias. Partiality of a neutral arbitrator, however, is one of several postaward issues over which courts have power of decision by statute. See G. L. c. 251, § 12(*a*)(2), paralleling the Uniform Ar-

---

[3] That order was appealable. G. L. c. 251, § 18(*a*)(3).

Arbitration Act § 12(a)(2), 7 U.L.A., at 55 (Master ed. 1978).

2. Following the arbitration award, and acting on it, the trust removed Hemisphere and appointed a new hotel management company. Hemisphere, after the arbitration award was vacated, brought an action in Superior Court seeking injunctive relief which would reinstate it as the management company. It moved simultaneously for a summary judgment requiring the trust to pay Hemisphere's management fee (based on gross receipts) into escrow, "pending a full hearing." The judge (a third judge) who heard the motions for injunctive relief and partial summary judgment rightly denied both. He reported those interlocutory orders under Mass.R.Civ.P. 64, 365 Mass. 831 (1974), because they were bound up with and affected the merits of the controversy in the first case, which was then pending in this court. The judge was well within his discretion in denying Hemisphere's motion since affirmative relief would have, in effect, decided questions to be arbitrated. Hemisphere had adequate remedies at law and the harm to the trust from switching managers back and forth is obvious. *Packaging Indus. Group. Inc.* v. *Cheney,* 380 Mass. 609, 616-618 (1980).

In the first case, bearing Superior Court docket number 80-5867, the order vacating the arbitration award is to be amended to provide for a remand of the matter to the AAA for a determination whether rule 20 of the AAA requires the case to be reheard. If so, new arbitration proceedings shall be held. If not, the arbitration award shall be confirmed. In the second case, bearing Superior Court docket number 81-5443, the interlocutory orders are affirmed.

*So ordered.*