Filed 6/24/26  Shifrin v. Strata Equity Global CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JUSTIN SHIFRIN,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STRATA EQUITY GLOBAL, INC.,<br><br>    Defendant and Appellant. | D085526<br><br><br>(Super. Ct. No.<br> 37-2021-00054291-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.


Ellenoff Grossman & Schole, Eric Landau and Travis Biffar for Defendant and Appellant.

Noonan Lance & Boyer, David J. Noonan, James R. Lance and Genevieve M. Sauter for Plaintiff and Respondent.


Defendant and appellant Strata Equity Global, Inc. (Strata), the former employer of plaintiff and respondent Justin Shifrin, appeals a judgment denying its motion to vacate an arbitration award and confirming that award

in Shifrin's favor on Shifrin's claims against it for breach of contract and failure to timely pay wages under Labor Code section 204.[1]  The arbitrator found Strata wrongfully withheld wages owed Shifrin in the form of bonus compensation, and awarded Shifrin over $12,000,000, consisting of the unpaid wages, a 25 percent penalty on the withheld wages (§ 210), prejudgment interest, attorney fees and costs.  Strata contends the arbitration award is flawed and the superior court erred by confirming it.  More specifically, Strata contends the arbitrator manifestly disregarded the law in various ways including by applying inapposite California law rather than federal law under the Federal Arbitration Act (FAA) and implausibly interpreting the governing employment agreements in reaching her conclusions.  Strata argues section 204 does not apply to nonpayment of wages and thus the arbitrator could not award section 210 penalty interest, attorney fees or prejudgment interest.  It maintains that even if section 204 applied, penalty interest cannot be awarded for a first violation absent a finding of willful or intentional conduct.  According to Strata, the superior court legally erred in confirming the award by relying on *Oman v. Delta Air Lines, Inc.* (2020) 9 Cal.5th 762 as support for the arbitrator's ruling and also by permitting Shifrin to amend the award to include "compound" prejudgment interest.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

---

[1]    Undesignated statutory references are to the Labor Code.

[2]    We state the underlying facts largely from the arbitrator's findings. (Accord, *Valencia v. Mendoza* (2024) 103 Cal.App.5th 427, 433, fn. 2.)

2

*Shifrin's Employment*

Strata is a real estate investment company. At the relevant times, Carlos Michan was Strata's founder and chairman; Michan's son David was its president/chief executive officer. In 2014, Strata (then Strata Equity Group, Inc.) began employing Shifrin as a part time analyst. The terms of Shifrin's part time employment and bonus program participation were contained in an offer letter he received that year.[3]

In 2015 Strata began employing Shifrin full time. Shifrin documented his "employment agreement, including salary, benefits, and profit participation percentage" in an e-mail to both Michans. They negotiated Shifrin's profit participation to be increasing percentages, eventually to 1.5

---

[3] The offer provided that Shifrin would receive one percent of the sponsor's "promote profit" from cash flows and profits from projects acquired after start of employment, which bonus percentage would vest immediately, and one percent of the profits of Strata Equity Group's management net income after reserves, which bonus percentage would vest immediately. The offer provided that the "percent participations may be revised up or down depending on the performance of the employee, number of executives participating in the bonus program, and/or the aggregate percentage the Owners decide to share with the executives."

percent in 2018 and thereafter, which Shifrin stated would "apply to all deals from [his] hire date."[4]

In 2020, Strata promoted Shifrin to director of acquisitions and the parties again renegotiated his compensation package. In August 2020, they agreed via e-mail that Shifrin would receive "1.50 [percent] profit participation on all past deals and 1.75 [percent] on all new deals, including Wilk 13." Shifrin signed an arbitration agreement providing in part that the parties "agree[d] that [Shifrin's] employment and this agreement involve interstate commerce and the interpretation and enforcement of this agreement to arbitrate will be governed by the provisions of the Federal Arbitration Act, [title] 9 [United States Code section] 1 et seq." Between 2015 and 2020, Strata paid Shifrin his negotiated salary and the net percentage of

---

[4] Copies of e-mails attached to a declaration in support of Strata's motion to vacate the arbitration award show that on December 14, 2015, David Michan responded to a proposal by Shifrin for a profit participation vesting schedule. Michan told Shifrin he "like[d] his proposal" then stated "the vesting schedule would look as follows: [¶] 2015-1.00 [percent] [¶] 2016-1.1667 [percent] [¶] 2017-1.3334 [percent] [¶] 2018-1.50 [percent] thereafter." Shifrin responded in part, "That profit percentage schedule is perfect. [¶] Thank you for agreeing with these terms to apply to all deals from my hire date." In August 2020, Shifrin requested a $150,000 annual salary and profit participation of "1.50 [percent] on all past deals" and "1.75 [percent] on new deals." He added, "You would agree that this includes Wilk 13 since this discussion should have occurred at YE 2019 or beginning of 2020 and Wilk closed in March 2020?" David Michan responded in part: "Be sure that you are recognized among the team. We can include Wilk in the bonus calc. [¶] And to confirm the $150k will start as of Aug 1st." Shifrin's first amended complaint refers to Wilk as the "Wilkinson 13 portfolio acquisition (13 communities with 3,177 apartment units) . . . ."

4

profits they had negotiated for each of those years, without regard to the percentages Strata allocated to its executive bonus program.[5]

In 2018, Strata sold 50 percent of the company to another entity. In 2021, Strata and its co-owner decided to sell over 90 percent of their assets, resulting in Strata receiving over $600 million in net profits. They decided to allocate 12 percent of the net proceeds to the executive profit participation plan, though Strata had allocated between 17 and 20 percent every year from 2014 to 2020. In November 2021, Shifrin learned he would not be receiving his regular bonus and that Strata would not be allocating 20 percent of its net profits to the executive profit-sharing pool. Using the 1.5 percent figure (and 1.75 percent for certain properties), he calculated his expected bonus on the net sales profits to be $9,253,905.

Strata, however, offered to pay Shifrin a $5,452,000 bonus for 2021. It informed Shifrin that to receive that bonus, he was required to sign a release, an economic interest agreement, and an issuance agreement for a new venture, SEG Exec Trifecta. Shifrin learned the bonus would not be all cash like previous years, but 60 percent cash and 40 percent reinvested in the new venture that would vest in three years as long as he was not terminated from Strata. Shifrin did not agree to sign the release or agreement. In December 2021, Strata paid Shifrin a $1,761,000 bonus, which was .29 percent of Strata's 2021 net profit.

*Shifrin's Lawsuit*

Shifrin sued Strata for breach of express and implied contract, breach of the covenant of good faith and fair dealing, nonpayment of wages and

---

[5] The arbitrator noted: "The percentages are not exact but very close. For example, in 2020 [Shifrin] was given a bonus of $461,150.00 which was calculated to be 1.49 [percent] of net profits instead of 1.5 [percent]."

failure to pay wages due under sections 204 and 206, as well as for a violation of section 226 for failing to provide him with certain records. Shifrin alleged a claim for promissory estoppel and sought a constructive trust as well as declaratory relief. Strata successfully moved to arbitrate the dispute, and the parties proceeded to arbitration.

*Arbitrator's Ruling*

On April 2, 2024, the arbitrator found Shifrin had met all of the elements of breach of contract; that the Michans knew they owed Shifrin his bonus based on the fixed negotiated percentages of its net profits, and that Shifrin was damaged for that breach in the amount of $9,253,905, less the $1,761,000 he received in bonus payment. The arbitrator found Strata did not pay Shifrin his full 2021 contracted bonus, which was considered wages under California law, and thus Shifrin was entitled to the remaining unpaid bonus of $7,492,905 plus a penalty of 25 percent of the wrongfully withheld amount under section 210, subdivision (a)(2). The arbitrator accepted Shifrin's expert's calculation of the total sum: $10,978,856, including $1,874,076 in penalties and $1,611,875 in interest. Shifrin was awarded $957,640.27 in attorney fees and costs.[6]

*Parties' Postarbitration Motions to Confirm and Vacate the Award*

Shifrin filed a form petition to confirm the arbitrator's award. In addition to the attorney fees awarded by the arbitrator, Shifrin sought $16,422.80 in prejudgment interest from April 1, 2024, to the date the award was served on April 8, 2024, ($2,052.85 daily) and 10 percent prejudgment interest on the $12,057,614.27 final award ($3,303.46 daily) under section

---

[6] The decision indicates the arbitrator awarded $907,564.50 in fees and $50,615.77 in costs, which totals $958,180.27. The parties do not mention the discrepancy.

218.6 and Civil Code (erroneously referenced as Code of Civil Procedure) section 3289 from April 9, 2024, through the date of entry of judgment. He requested 10 percent postjudgment interest under Code of Civil Procedure section 685.010, subdivision (a)(1) from the date of entry of judgment. Shifrin asked for attorney fees for the time spent opposing Strata's anticipated motion to vacate the award.

Strata moved to vacate the arbitration award. It argued that because the parties had agreed the FAA governed the arbitration agreement and its enforcement, section 10 of the FAA (9 U.S.C. § 10) applied to its motion, and thus the court could vacate the award for the arbitrator's manifest disregard of the law. According to Strata, the arbitrator manifestly disregarded the law by rewriting the parties' agreements to double count Shifrin's discretionary bonus when computing damages and by awarding 10 percent statutory interest, 25 percent penalty interest, and attorney fees based on violations of section 204, which it argued did not apply to the parties' dispute. Strata argued that because section 204 did not apply, the arbitrator could not award Shifrin attorney fees or prejudgment interest, whether based on sections 218.6 or 204. Additionally, Strata argued the arbitrator could not award prejudgment interest under Civil Code section 3287 because Shifrin's damages were not ascertainable. Strata argued that even if section 204 applied, Shifrin was not entitled to 25 percent penalty interest because Shifrin's claim was his first asserting a section 204 violation, and the arbitrator in its final award did not find Strata's actions willful or intentional, a prerequisite to section 204 penalty interest. Strata filed a separate opposition to Shifrin's petition to confirm the award.

In response to Strata's motion to vacate, Shifrin argued Strata sought to relitigate the arbitrator's contractual interpretations and factual findings,

7

and that the California Arbitration Act (CAA) provided the applicable standards for Strata's motion. He argued that even if the FAA's manifest disregard of the law principle applied, Strata could not meet its burden to establish that standard, as there was no evidence the arbitrator understood the law, correctly stated it, then disregarded it. Shifrin further argued the arbitrator's contractual interpretation was rational and plausible. He argued the arbitrator correctly found section 204 applied, and that Strata's cited authority showed the arbitrator did not manifestly disregard the law with regard to the section 204 penalty because the arbitrator found bonus wages were owed, Strata knew the bonus wages were owed, and Strata wrongfully withheld them. He argued the arbitrator properly awarded attorney fees, prejudgment interest and section 210 penalties.

The parties then provided supplemental briefing on whether the vacatur provisions of the FAA applied as well as whether those provisions were procedural or substantive. Pointing to the arbitration agreement's language, Shifrin argued section 10 of the FAA was procedural and did not apply in the state court proceeding. He argued that even if it did apply, Strata could not establish the FAA's manifest disregard standard or demonstrate the arbitrator's contract interpretation was completely irrational. Strata argued in part that where parties agree enforcement would be governed by the FAA as Strata and Shifrin had done, California courts recognized section 10 of the FAA applied to confirmation and vacatur of arbitration awards.

In July 2024, the court granted Shifrin's petition and denied Strata's motion. It ruled that even assuming the parties had agreed to enforce the award under the FAA, Strata did not show the FAA required the award be vacated; that is, it did not show the Arbitrator "understood and correctly

8

stated the law but proceeded to disregard it." It reached this result in part because Strata did not cite the main case it relied upon in its vacatur motion—*See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889—to the arbitrator. The court further found that the California Supreme Court's decision in *Oman v. Delta Air Lines, Inc., supra,* 9 Cal.5th 762 supported its conclusion that the arbitrator did not manifestly disregard the law. The court found Shifrin was the prevailing party entitled to mandatory attorney fees and costs under Code of Civil Procedure section 1293.2, as well as prejudgment and postjudgment interest.

Several days later, Shifrin served a proposed judgment. Strata objected in part on grounds the judgment included "overinflate[ed] interest" based on the entire final award, rather than just on the due and unpaid wages owed.[7] Strata also unsuccessfully moved for reconsideration. After considering briefing and argument on the issue of prejudgment interest, the court entered a $12,933,400.15 judgment in Shifrin's favor in accordance with the arbitrator's final award. Specifically, the judgment included $12,057,614.27 for the full amount of the final award; $130,655 in attorney fees and $1,946.88 in costs; $16,422.80 in prejudgment interest at a $2,052.85 daily rate from April 1, 2024, through April 8, 2024; $726,761.20 in prejudgment interest from April 9, 2024, to the December 3, 2024 entry of

---

[7] Shifrin's counsel stated in a declaration that the first proposed judgment was rejected for a technical error, then resubmitted. Strata objected to both the original and refiled proposed judgments. Shifrin's counsel at the same time filed a supplemental declaration reiterating that Shifrin was requesting the additional prejudgment interest under Civil Code section 3289 (again misidentified as the Code of Civil Procedure) and Labor Code section 218.6, from April 9, 2024, through the date of entry of judgment, on the $12,057,614.27 final award amount at a $3,303.46 daily rate.

9

judgment calculated at a $3,303.46 daily rate; and postjudgment interest on unpaid amounts at 10 percent per annum from the date of entry of judgment.

Strata filed this appeal from the judgment and various other orders.[8]

DISCUSSION

I. *Standard of Review*

California law (the CAA, Code Civ. Proc., § 1280 et seq) and Federal law (the FAA, 9 U.S.C. § 10 et seq.) favor arbitration as a viable means of resolving legal conflicts. (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916; *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492; see *Nitro-Lift Technologies, L.L.C. v. Howard* (2012) 568 U.S. 17, 20 [FAA " 'declare[s] a national policy favoring arbitration' "]; *Scherk v. Alberto-Culver Co.* (1974) 417 U.S. 506, 510-511 [FAA was "designed to allow parties to avoid 'the costliness and delays of litigation,' and to place arbitration agreements 'upon the same footing as other contracts' "]; *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 384 (*Cronus*) [section 2 of the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements"].)

" 'Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties'

---

8    In arbitration proceedings, the Legislature has identified several orders as specifically appealable in addition to a final judgment. (Code Civ. Proc., § 1294.) Strata's notice of appeal identifies orders that are subsumed in the judgment such as the order granting confirmation and denying Strata's motion to vacate the award, as well as the order awarding prejudgment interest. The notice of appeal includes the court's orders denying Strata's motions for reconsideration, which are not separately appealable. (*Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1459.) The notice of appeal also purports to appeal from the arbitrator's interim and final awards, which we do not review. (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1217.)

agreement to submit to arbitration.' " (*Richey v. AutoNation, Inc., supra*, 60 Cal.4th at p. 916.) Thus, both "[t]he [CAA] . . . and the [FAA] . . . provide limited grounds for judicial review of an arbitration award. Under both statutes, courts are authorized to vacate an award if it was (1) procured by corruption, fraud, or undue means; (2) issued by a corrupt arbitrator; (3) affected by prejudicial misconduct on the part of the arbitrator; or (4) in excess of the arbitrator's powers." (*Richey*, at p. 916, citing Code Civ. Proc., § 1286.2, subd. (a); 9 U.S.C. § 10(a); see *Oxford Health Plans LLC v. Sutter* (2013) 569 U.S. 564, 568 ["Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances' "]; the "limited judicial review . . . 'maintain[s] arbitration's essential virtue of resolving disputes straightaway' "]; *VIP Mortgage Incorporated v. Gates* (9th Cir. 2025) 162 F.4th 1010, 1014-1015.)

Under California law, " '[g]enerally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties.' " (*Law Finance Group, LLC v. Key* (2023) 14 Cal.5th 932, 957, quoting *Richey v. AutoNation, Inc., supra*, 60 Cal.4th at p. 916.)

Section 10 of the FAA permits vacatur of an arbitration award only in four narrow circumstances.[9] Under section 10(a)(4) of the FAA, authorizing

_____

9      These are: "(1) where the award was procured by corruption, fraud, or undue means; [¶] (2) where there was evident partiality or corruption in the arbitrators, or either of them; [¶] (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or [¶] (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." (9 U.S.C. § 10(a).)

11

a federal court to set aside an arbitral award " 'where the arbitrator[ ] exceeded [his] powers,' " the "party seeking relief . . . bears a heavy burden. 'It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error.' [Citation.] Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits. [Citations.] Only if 'the arbitrator act[s] outside the scope of his contractually delegated authority'—issuing an award that 'simply reflect[s] [his] own notions of [economic] justice' rather than 'draw[ing] its essence from the contract'—may a court overturn his determination. [Citation.] . . . [T]he sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." (*Oxford Health Plans LLC v. Sutter*, *supra*, 569 U.S. at p. 569; see also *Countrywide Financial Corp. v. Bundy* (2010) 187 Cal.App.4th 234, 249.) " ' "It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." [Citations.]' [Citations.] Even gross, ' "painfully clear" ' or 'obvious' errors are insufficient to permit vacatur under [9 U.S.C. § 10](a)(4)." (*Countrywide Financial Corp.*, at pp. 249-250.)

II. *Does the CAA or FAA Apply to the Parties' Respective Motions to Confirm or Vacate?*

We first address a threshold question not reached by the superior court: which standards apply to the parties' respective requests to confirm or vacate the award, those under the CAA or the FAA? The answer matters because Strata does not argue on appeal that the superior court should have vacated the award under California standards. Thus, if FAA standards are not

12

applicable, we may uphold the court's confirmation of the award on forfeiture principles alone. As we explain, the question turns on the content of the arbitration agreement. (*Cronus*, *supra*, 35 Cal.4th at pp. 383, 385 [" 'Just as [parties to an arbitration agreement] may limit by contract the issues which they will arbitrate [citation], so too may they specify by contract the rules under which that arbitration will be conducted' "], quoting *Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 479, fn. 6 (*Volt*).)

The parties agreed Shifrin's employment and the arbitration agreement involved interstate commerce. Consequently, "the substantive provisions of the FAA govern the arbitration agreement . . . . As the high court has said, 'the FAA's "substantive" provisions—§§ 1 and 2—are applicable in state as well as federal court . . . .' " (*Los Angeles Unified School Dist. v. Safety National Casualty Corp.* (2017) 13 Cal.App.5th 471, 478, quoting *Volt*, *supra*, 489 U.S. at p. 477, fn. 6.)

But the FAA's *procedural* provisions—which include 9 U.S.C. § 10—apply only to proceedings in federal court, unless the contract contains a choice-of-law clause expressly incorporating them. (*Judge v. Nijjar Realty, Inc.* (2014) 232 Cal.App.4th 619, 630-631; see *Cronus*, *supra*, 35 Cal.4th at p. 394; *Swissmex-Rapid S.A. de C.V. v. SP Systems, LLC* (2012) 212 Cal.App.4th 539, 544; *Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 173-174 (*Valencia*) [identifying the FAA's "*procedural* provisions" as 9 U.S.C. §§ 3, 4, 10, 11].) " '[T]he FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration.' " (*Cronus*, at p. 385, quoting *Volt, supra,* 489 U.S. at p. 477; *Judge*, at p. 630.) Thus, " '[t]he procedural provisions of the CAA . . . apply in *California* courts by default . . . . [T]he parties may "*expressly* designate that any arbitration proceeding [may] move forward under the FAA's procedural provisions rather than

13

under state procedural law." [Citation.] Absent such an express designation, however, the FAA's procedural provisions do not apply in state court.'" (*Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934, 945; see *Cronus*, *supra*, 35 Cal.4th at p. 394.) This is because "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." (*Judge*, at p. 630, quoting *Volt*, at p. 476.) Absent an agreement by the parties to apply the procedural provisions of the FAA to their arbitration, federal procedural rules apply only where state procedural rules conflict with or defeat the rights Congress granted in the FAA. (*Judge*, at p. 631.)

"The question of whether [an arbitration agreement] incorporated the FAA's procedural provisions, thereby eliminating the trial court's authority under [Code of Civil Procedure] section 1281.2[, subdivision] (c), 'is a question of law involving interpretation of statutes and the contract (with no extrinsic evidence). We therefore apply a de novo standard of review.'" (*Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 346 (*Victrola*), quoting *Valencia*, *supra*, 185 Cal.App.4th at pp. 161-162.)

Here, the parties' arbitration agreement provides the FAA would govern the "interpretation and enforcement of this agreement to arbitrate . . . ."[10] In *Victrola*, the court held that when an arbitration agreement provides that its "enforcement" shall be governed by the FAA, the FAA

10 The agreement further provides that arbitrable disputes "shall be . . . administered by JAMS pursuant to its Employment Arbitration Rules and Procedures (available at <https://www.jamsadr.com/rulesemployment-

14

governs a party's petition *to compel* arbitration. (*Victrola*, *supra*, 46 Cal.App.5th at p. 348 [analyzing the phrase " 'Enforcement of this agreement to arbitrate shall be governed by the [FAA]' "].) But does the phrase "enforcement of this agreement to arbitrate" encompass postarbitration procedures such as the confirmation or vacation of an award resulting from arbitration? Stated another way, is this language an "express[ ] designat[ion]" to incorporate the procedural provisions of the FAA rather than the CAA? (*Cronus, supra*, 35 Cal.4th at p. 394.)

Based on *Cronus* and *Victrola*, we answer the question in the affirmative. Both *Cronus* and *Victrola* pointed out that the court in *Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711 (*Mount Diablo*) had interpreted contractual language stating the agreement's " 'validity, construction, interpretation and *enforcement*' " would be governed by California law. (*Cronus*, *supra*, 35 Cal.4th at p. 387; *Victrola*, *supra*, 46 Cal.App.5th at pp. 346-347; *Mount Diablo*, at p. 716.) The high court in *Cronus* agreed that choice of law provisions similar to that in *Mount Diablo* incorporated California's arbitration rules. (*Cronus*, at p. 387.) *Victrola* explained that while the arbitration agreement in *Mount Diablo* involved interstate commerce and thus the FAA presumptively applied, the parties' choice of law provision "compelled application of state procedural

---

Arbitration>)." Rule 25 of the JAMS Employment Arbitration Rules & Procedures, of which we may take judicial notice (*Haydon v. Elegance at Dublin* (2023) 97 Cal.App.5th 1280, 1291, fn. 5) provides in part: "Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the [FAA], 9 U.S.C. § 1 et seq., *or applicable state law*." (Emphasis added.) Though the parties agreed these rules would govern their agreement (*Judge v. Nijjar Realty, Inc.*, *supra*, 232 Cal.App.4th at p. 636), the rule identifying both the FAA "or applicable state law" does not resolve the question.

law." (*Victrola*, at p. 347, citing *Mount Diablo*, at p. 722.) *Victrola* further observed that the court in *Valencia, supra*, 185 Cal.App.4th 153 distinguished *Mount Diablo* in a case where the arbitration agreement stated only that its interpretation would be governed by the FAA. (*Victrola, supra*, 46 Cal.App.5th at pp. 347-348.) *Valencia* stated, " 'We do not read *Mount Diablo* to suggest that an explicit reference to "interpretation," by itself, would determine the applicable procedural law.' " (*Victrola*, at p. 348, quoting *Valencia*, at p. 179.) *Victrola* concluded: "If, as the courts in *Mount Diablo* and *Valencia* . . . held, contracting parties' explicit reference to 'enforcement' under California law required the trial court to consider any motions to compel arbitration under the CAA, it follows that the instant parties' reference to 'enforcement' under the FAA required the court to consider the [moving parties'] motion to compel arbitration under the FAA." (*Victrola, supra*, 46 Cal.App.5th at p. 348.)

In sum, by stating the FAA would govern the agreement's "enforcement," the agreement designated the FAA's "procedural law." (*Victrola, supra*, 46 Cal.App.5th at p. 347; *Mount Diablo, supra*, 101 Cal.App.4th at p. 722; see *Cronus, supra*, 35 Cal.4th at p. 394.)

Shifrin points to *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334 and *Siegel v. Prudential Ins. Co.* (1998) 67 Cal.App.4th 1270, 1290 as rejecting claims that the FAA's grounds for judicial review of arbitration awards, including manifest disregard of the law, preempt their CAA counterparts. It is true that at the referenced pages *Cable Connection Inc.* cited to *Cronus* and its statement that " 'the United States Supreme Court does not read the FAA's procedural provisions to apply to state court proceedings.' " (*Cable Connection, Inc.*, at p. 1351, quoting *Cronus, supra,* 35 Cal.4th at p. 389.) It explained that "the provisions for judicial review of

16

arbitration awards in sections 10 and 11 of the FAA are directed to 'the United States court in and for the district where the award was made' " and observed that *Cronus* had held similar language elsewhere in the FAA reflected Congress's intent to limit the application of those provisions to federal courts. (*Cable Connection, Inc.*, at p. 1351, citing *Cronus*, at pp. 388-389.) But preemption is different from the question of whether the parties have expressly designated FAA procedural provisions to be applicable. As *Cronus* emphasized, the parties may do so notwithstanding its holdings regarding preemption. (*Cronus*, at p. 394 ["Our opinion does not preclude parties to an arbitration agreement to *expressly* designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law"]; see also *Valencia, supra*, 185 Cal.App.4th at p. 157; *Victrola, supra*, 46 Cal.App.5th at pp. 346-348.)

III. *Strata's Arguments Concerning the Arbitrator's Asserted Manifest Disregard of the Law*

A. *Contentions*

Strata makes a series of attacks on the arbitrator's reasoning that appear intended to invoke a federal court doctrine permitting an arbitration award be vacated for the arbitrator's "manifest disregard of the law." (See

17

*VIP Mortgage Incorporated v. Gates, supra*, 162 F.4th at p. 1014.)[11]  Strata first claims that the arbitrator had "acknowledged the parties agreed to the application of substantive law under the FAA to the arbitration proceedings . . . ."  It argues the arbitrator "conflated [the] timely payment of wages with an underpayment of a bonus" and knew her ruling that incentive bonus payments constituted wages was incorrect in part because she "relied on precedent under California law, instead of decisional law under the FAA . . . ."  Strata argues it provided the arbitrator with the correct definition of wages under section 204 with citations to federal precedent.  It states the arbitrator's cited California cases do not support the conclusions reached, but that even if California law were applicable, *Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217 "has made clear that discretionary bonus amounts do not become 'wages' until the final amount is calculated pursuant to the company's discretionary bonus formula, including after any condition precedent have [*sic*] been satisfied."  According to Strata, under either the FAA or state law, it "timely paid [Shifrin's] bonus once calculated."  Strata concludes that the arbitrator knew the law, intentionally misapplied it, and refused to fix errors when it objected.

---

11     It is "uncertain" whether the "manifest disregard of the law" doctrine remains legally viable.  (*Countrywide Financial Corp. v. Bundy*, *supra*, 187 Cal.App.4th at p. 253.)  The *Countrywide* court observed that the U.S. Supreme Court has called the doctrine into question, but later applied it assuming it remained viable.  (*Id.* at p. 252; see *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* (2010) 559 U.S. 662, 672, fn. 3 ["We do not decide whether ' "manifest disregard" ' survives . . . as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10"].)  *Countrywide* nevertheless evaluated the award in that case under the test, as the U.S. Supreme Court had done.  (*Countrywide*, at p. 253.)  We do the same here.

Strata next argues the arbitrator's award conflicts with Shifrin's employment agreements. It maintains that the arbitrator knew various contract interpretation principles from her "years on the bench" as well as its pretrial arbitration brief. Strata argues these rules are well-defined and explicit for purposes of the manifest disregard doctrine. Pointing to Shifrin's original 2014 employment agreement, Strata argues that "[w]hen [Shifrin] asked to 'keep' his [one percent], he meant 'to retain [it] in his possession or power' ": and he "kept the 'discretionary' [one percent] bonus percentage, meaning the amount of any subsequent award was 'left to [Strata's] individual choice or judgment.' "

Strata argues that section 204 does not apply to the underpayment of wages, much less underpayment of discretionary bonuses. It points to numerous federal cases addressing section 204, some of which state that the section deals solely with the timing of wages, and not whether correct wages were paid. Strata also cites *See's Candy Shops, Inc. v. Superior Ct.*, *supra*, 210 Cal.App.4th 889 for the same proposition: that section 204 does not apply to the question of how wages are calculated or what wages are owed. It argues it directed the arbitrator to the controlling law precluding section 204's application, but the arbitrator "manifestly disregarded all precedent and impermissibly converted a contract dispute over whether any additional bonus amounts were owed to [Shifrin] into a 'timing of payment' issue, presumably for the sole purpose of adding punitive penalties to the Final Award."

Strata finally argues that because section 204 is inapplicable, Shifrin is not entitled to penalty interest, attorney fees, or prejudgment interest. Strata continues that even if section 204 were applicable, Shifrin would not be entitled to penalty interest because this was its first violation, and the

19

arbitrator did not find its actions were willful and intentional as it must under section 210. It argues the prejudgment interest award cannot stand under Civil Code section 3287 because rather than Shifrin's damages being certain or capable of being made certain, "the facts bearing on the calculation of [Shifrin's] 2021 annual bonus were hotly disputed."

B. *Manifest Disregard Standard*

As indicated above, the FAA sets a " 'high standard for vacatur.' " (*VIP Mortgage Incorporated v. Gates*, *supra*, 162 F.4th at p. 1014; *HayDay Farms, Inc. v. FeeDx Holdings, Inc*. (9th Cir. 2022) 55 F.4th 1232, 1240 (*HayDay*).) Courts "will not disturb even an incorrect legal decision by an arbitrator unless it was completely irrational or reflected manifest disregard of the law. For example, courts do not 'decide the rightness or wrongness of the arbitrators' contract interpretation'—we must only decide 'whether the panel's decision "draws its essence" from the contract.' [Citation.] We cannot 'vacate an award simply because we might have interpreted the contract' or statute 'differently.' " (*VIP Mortgage*, at p. 1014; *HayDay*, at p. 1240.) " '[M]anifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." (*Lagstein v. Certain Underwriters at Lloyd's, London* (9th Cir. 2010) 607 F.3d 634, 641.)

" 'To demonstrate manifest disregard, the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same.' [Citation.] 'There must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it.' " (*HayDay*, *supra,* 55 F.4th at p. 1241.) And the law purportedly ignored by the arbitrator must be "well-defined, explicit, and

20

clearly applicable to the case." (*Countrywide Financial Corp. v. Bundy*, *supra*, 187 Cal.App.4th at p. 253.)

Errors of fact do not generally constitute manifest disregard of the law, unless the arbitrator "intentionally ignored a critical, undisputed fact that would have determined a legal issue in the arbitration." (*VIP Mortgage v. Gates*, *supra*, 162 F.4th at p. 1015; *HayDay*, *supra,* 55 F.4th at p. 1241.)[12] This "legally dispositive fact" exception applies where, for example, an arbitrator is on notice of a critical fact but ignores it as a form of compromise so as "to apply his own form of justice." (*VIP Mortgage, Inc.*, at p. 1016.)

C. *Analysis*

Here, Strata has not presented specific facts demonstrating the arbitrator here manifestly disregarded the law or ignored a legally dispositive fact in reaching the final award. The arguments outlined above amount to a

---

[12]     The Ninth Circuit in *VIP Mortgage Incorporated v. Gates* explains: "[T]he 'legally dispositive fact' basis for vacatur applies if (1) the factual error was so critical to the disputed legal issue that it determined the outcome of that issue, and (2) the fact was so obvious and undisputed that the arbitrator must have known about it when she decided the legal issue." (*VIP Mortgage Incorporated v. Gates*, *supra*, 162 F.4th at p. 1015.) There, the court held the arbitrator's failure to remember that the parties had agreed to bear their own fees for certain counterclaim did not fall within this narrow carveout for "legally dispositive facts." (*Ibid*.) The plaintiff met the first prong, but not the second, as "[b]y the time the arbitrator issued the final award, it had been over a year since she had entered the order approving the stipulation to dismiss the counterclaims." (*Ibid*.) And "[c]ritically, [the plaintiff] did not rely on, or remind the arbitrator of, the stipulation's fees provision when it objected to the motion for attorneys' fees fourteen months later. [¶] Given that the fees request for the counterclaims was a minor issue in the arbitration, the arbitrator may not have remembered the details of that stipulation. And because [the plaintiff] did not mention that stipulation in its briefing, the arbitrator awarded attorneys' fees without distinguishing between time spent on [defendant's] claims and that devoted to the counterclaims." (*Ibid*.)

claim that the arbitrator may have been mistaken in interpreting the parties' contracts, applying California law or construing section 204 to permit Sillman to recover penalty interest for Strata's underpayment (versus *untimely* payment) of his bonus. Under the principles discussed above, it is not enough to show the arbitrator was wrong, misunderstood the law, or interpreted it imperfectly; Strata must present evidence that the arbitrator "*understood and correctly stated*" controlling law, but intentionally disregarded it. (*HayDay*, *supra*, 55 F.4th at pp. 1240-1241, italics added.) " 'The risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in *good faith* to interpret the relevant law, or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes, and such legal and factual errors lie far outside the category of conduct embraced by [9 U.S.C. §] 10(a)(4).' " (*New Frontier Investment AG v. BitCenter, Inc.* (N.D.Cal. 2024) 715 F.Supp.3d 1245, 1258; see also *id*. at p. 1262 ["Reduced to its essence, Petitioners argue the Arbitrator made an 'erroneous legal conclusion.' This type of error is insufficient to warrant vacatur"].) We will not vacate an award because we might have interpreted the law differently. (*VIP Mortgage Incorporated v. Gates*, *supra*, 162 F.4th at p. 1014.) As Shifrin points out, the fact Strata submitted authority to the arbitrator that she ignored does not meet the "manifest disregard" standard. (*New Frontier*, at p. 1258 [" '[t]he mere submission of authority to an arbitrator (even when the arbitrator requests it, which happens in most if not all arbitrations), cannot possibly give rise to a claim that the arbitrator "recognized" that authority' "].)

Nor is it enough that the arbitrator should have known basic principles of contract interpretation that Strata maintains compelled a resolution in its

favor. Absent any indication that the arbitrator stated applicable and settled principles but elected to ignore them, the claim fails. Strata argues that such principles, properly applied, means that Shifrin only agreed to keep a discretionary one percent portion of his bonus as evidenced by his original employment agreement. It argues the arbitrator "does not mention these material terms" and suggested she "ignore[d] all of the words in [Shifrin's] employment agreements that establish a discretionary bonus." We see this argument in effect as one that the arbitrator should have come to a different factual finding—that the e-mails did not reflect a new agreement. Such an argument does not warrant vacatur. (See *Biller v. Toyota Motor Corp.* (9thCir. 2012) 668 F.3d 655, 669 [" '[m]anifest disregard of the facts [alone] is not an independent ground for vacatur in this circuit' "].) And the record does not establish the arbitrator disregarded critical *undisputed* facts, rather, she rationally interpreted the parties' December 2015 e-mails to conclude they reflected a new agreement about Shifrin's profit participation.

We hold the arbitrator's award reflects a "plausible interpretation of the parties' contracts" and thus was not completely irrational. (*HayDay*, *supra*, 55 F.4th at p. 1242.)[13] The arbitrator ruled that after the initial 2014 agreement, Shifrin and David Michan had entered into a new agreement via e-mail (see footnote 4, *ante*) to give Shifrin a fixed interest in Strata's net

---

[13]   To decide whether an arbitrator's award is " 'completely irrational,' " the court decides " 'only whether the arbitrator's decision draws its essence from the contract, not the rightness or wrongness of the arbitrator's contract interpretation.' [Citation.] An award is completely irrational if it ignores controlling terms of the parties' contract. [Citations.] [¶] Further, '[a]n arbitrator does not exceed its authority if the decision is a plausible interpretation of the . . . contract.' [Citation.] 'Accordingly, the court must defer to the arbitrator's decision as long as the arbitrator even arguably construed or applied the contract.' " (*HayDay*, *supra*, 55 F.4th at p. 1241.)

proceeds each calendar year without regard for the amount allocated to the executive bonus program, and that Strata had paid him the agreed-upon percentage every year from 2015 to 2020.  The arbitrator found Shifrin presented clear and convincing evidence of a new contract or novation, even though such a finding was not necessary in light of its other findings.  "Because the complete irrationality standard 'is extremely narrow and is satisfied only where the arbitration decision fails to draw its essence from the agreement [citation], [Strata's] effort to vacate the award on that ground . . . fails." (*HayDay*, *supra*, 55 F.4th at p. 1242.)  To hold otherwise would grant Strata "an unwarranted do-over." (*Ibid*.)

Even if we assume arguendo *See's Candy Shops, Inc. v. Superior Ct.*, *supra*, 210 Cal.App.4th 889 clearly demonstrated the arbitrator reached the wrong result, we would not disturb the award.  Strata in its trial/arbitration brief did not cite to that case, thus we may conclude the arbitrator was unaware of it when it fashioned the award, and thus did not manifestly disregard it.  Strata points to its combined objections to the arbitrator's interim award and reconsideration motion, saying it alerted the arbitrator to *See's Candy Shops*.  Strata's papers cited the case at the end of a lengthy footnote for the proposition that section 204 deals solely with the timing of wages and not whether these wages were paid.  But Strata does not point to authority standing for the proposition that informing an arbitrator of case law after the fact equates to an arbitrator acknowledging and stating that law but ignored it in making its award.  In any event, we rely on the cases saying that mere submission of authority is not enough. (See *New Frontier Investment AG v. BitCenter, Inc.*, *supra*, 715 F.Supp.3d at p. 1258; *Jenks v. DLA Piper* (*US*) *LLP* (N.D.Cal. 2014, No. 13-cv-05381-VC) [2014 WL 3381947, at *7].)

Strata's remaining arguments—that the arbitrator (1) incorrectly applied section 210 to award a penalty because any violation was its first, and not willful or intentional and (2) incorrectly awarded attorney fees and prejudgment interest based on the arbitrator's application of section 204— again ask us to simply review the arbitrator's decision for error. It does not point to evidence in the record, *other than the result*, that the arbitrator recognized and correctly stated controlling law but *intentionally* disregarded it. (*HayDay*, *supra*, 55 F.4th at pp. 1240-1241; *Biller v. Toyota Motor Corp.*, *supra*, 668 F.3d at p. 665 [" 'To vacate an arbitration award [for manifest disregard of the law], "[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it" ' "].)

IV. *Court's Reliance on* Oman v. Delta Air Lines, Inc. *to Confirm the Award*

Strata contends the superior court committed a "clear error of law" by creating "new and unsupportable grounds" to confirm the award (or to deny its motions to reconsider and/or vacate). Specifically, Strata criticizes the court's reliance on *Oman v. Delta Air Lines, Inc*, *supra*, 9 Cal.5th 762 to support the arbitrator's application of section 204 to Shifrin's claims. Strata argues *Oman* does not address the issue, and the arbitrator could not have relied on the case because Shifrin raised it for the first time in opposition to its motion to vacate the award.

Regardless of the specific questions addressed by the court in *Oman*, it explained generally the public policies served by section 204 include *full and complete* payment of wages: "Section 204 serves the 'public policy in favor of *full and prompt payment of an employee's earned wages*,' which 'is fundamental and well established: " 'Delay of payment *or loss of wages* results in deprivation of the necessities of life, suffering inability to meet just obligations to others, and, in many cases may make the wage-earner a charge

25

upon the public.' " ' [Citations.] Section 204, insofar as it applies to the entirety of an employee's wages, directly serves this policy. It is less apparent how the policy is meaningfully advanced by requiring payment of California-earned wages on a California-specified timeline when those wages represent just a small fraction of the earnings an employee relies on for support." (*Oman v. Delta Air Lines, Inc.*, *supra*, 9 Cal.5th at p. 777, italics added, citing in part *Voris v. Lampert* (2019) 7 Cal.5th 1141, 1148, ["prompt *and complete* wage payments are of critical importance to the well-being of workers, their families, and the public at large," italics added].)

Strata in reply characterizes *Oman v. Delta Air Lines, Inc.*, *supra*, 9 Cal.5th 762 as saying "nothing about [s]ection 204 applying to unpaid as opposed to untimely paid wages, and . . . nothing supportive of the arbitrator's decision to turn a promise of a bonus based on net profits into 'wages' due to [Shifrin] under section 204." It argues that "*Oman* stands for the entirely unremarkable proposition that California public policy favors the timely payment of wages earned." But *Oman*'s references to full and complete payment of earned wages and the impact of lost wages belie that point. Notably, based on the Labor Code definition of "wages," the California Supreme Court recognizes that "[i]ncentive compensation, such as bonuses and profit-sharing plans . . . constitute wages." (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618, citing in part *Neisendorf v. Levi Strauss & Co.* (2006) 143 Cal.App.4th 509, 522 ["bonuses are considered 'wages' within the meaning of . . . section 200"]; see also *Davis v. Farmers Ins. Exchange* (2016) 245 Cal.App.4th 1302, 1331, fn. 20 ["wages include not just salaries earned hourly, but also bonuses, profit-sharing plans, and commissions"].)

Strata's second point is that the superior court in considering whether to confirm the arbitration award erred by citing cases not relied upon by the

26

arbitrator because its focus in applying the manifest disregard standard should have been on what the arbitrator knew or relied upon. It argues "[i]t should be axiomatic that the arbitrator could not have implicitly relied on a case for a proposition never advanced before her." Strata makes this proposition in its opening brief without authority. " 'When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration.' " (*G.F. Galaxy Corp. v. Johnson* (2024) 100 Cal.App.5th 542, 550, fn. 4.) For the first time in reply, it cites authorities setting out the manifest disregard standard as support for this proposition. Out of fairness to Shifrin, we will not consider the procedural point or whether these authorities support Strata's argument because Strata "do[es] not explain the delayed presentation of those arguments." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 65.)

V. *Award of Civil Code Section 3287 Postaward, Prejudgment Interest*

Shifrin's form petition to confirm the arbitration award sought interest from April 1, 2024, "at the statutory rate." As summarized above, along with the petition, Shifrin's counsel submitted a declaration stating that in addition to the prejudgment interest awarded by the arbitrator and the prejudgment interest from April 1, 2024, to April 8, 2024, Shifrin sought "additional prejudgment interest at the rate of ten percent per annum pursuant to Code of Civil Procedure [*sic*] section 3289 and Labor Code Section 218.6, from April 9, 2024, through the date of entry of judgment, on the final award amount of $12,057,614.27 (which includes the attorneys' fees and costs awarded in the final arbitration award dated April 2), which is a daily rate of $3,303.46."

When disputes arose over Shifrin's request for additional prejudgment interest, the parties briefed the matter. Shifrin argued that as the prevailing party, he was entitled to prejudgment interest on the full amount of the final

27

award under Civil Code section 3287, subdivision (a). He argued the full amount of the final award became a "new, fixed, liquidated liability" when it was issued on April 8, 2024. Shifrin argued authorities were clear that a prevailing party in arbitration was entitled to an award of prejudgment interest from the date of the final arbitration award to the date of entry of judgment on the entire amount of the award, including attorney fees, punitive damages, and costs.

Strata characterized Shifrin as making an untimely and "impermissible" request for reconsideration or amendment of the court's order confirming the arbitrator's award so as "to increase the prejudgment interest awarded to him by the arbitrator." Strata pointed out Shifrin's notice of his motion to confirm the arbitration award only asked that the award be confirmed "as made pursuant to section 1286 of the Code of Civil Procedure" and that the petition did not mention a Civil Code section 3287 adjustment. It argued such an adjustment would give Shifrin an undeserved windfall of almost $175,000, including prejudgment interest on penalty interest and attorney fees in violation of the Labor Code.

The court awarded Shifrin $726,721.20 in postaward, prejudgment interest, calculating it at $3,303.46 daily from April 9, 2024, to the December 3, 2024 entry of judgment.

A. *Contentions*

Strata challenges the superior court's order granting Shifrin postaward, prejudgment interest. It characterizes the court's order as an "untimely reconsider[ation]" of Shifrin's motion to confirm, and the award as "compound interest." Strata first asserts that Shifrin did not ask for such interest under Civil Code section 3287 either in the notice of his petition to

28

confirm the award, nor in his supporting and reply briefs.  It says "this clear and unequivocal statutory requirement" for notice is required by due process.

Strata also asserts Shifrin failed to give notice he intended to seek prejudgment interest on any amounts other than wages, such as attorney fees, penalty interest, and prejudgment interest.  Citing *Westbrook v. Fairchild* (1992) 7 Cal.App.4th 889, Strata argues that imposition of 10 percent prejudgment interest on the previously awarded prejudgment interest violates Article XV, section 1, subdivision 2 of the California Constitution, mandating simple interest of not more than 10 percent on awards.

B.  *Legal Principles*

Civil Code section 3287 provides:  "A person who is entitled to recover damages certain . . . and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day . . . ."  (Civ. Code, § 3287, subd. (a).)

A prevailing party in arbitration is entitled to prejudgment interest on the entire award, including attorneys' fees, from the date of the final award to entry of judgment.  (Civ. Code, § 3287, subd. (a); *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085, 1106-1107 (*Britz*); *Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 27-28; *Tenzera, Inc. v. Osterman* (2012) 205 Cal.App.4th 16, 21-22 [citing *Britz* and *Pierotti*].)  If the statutory conditions are satisfied, the court must award such interest (*Tenzera, Inc.*, at p. 21); that is, such an award is mandatory.  (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 376.)  The purpose of such an award is to compensate the prevailing party for the loss of money during the period before entry of judgment.  (*Tenzera*, at p. 21.)

In *Britz*, the Court of Appeal upheld an award of prejudgment interest under Civil Code section 3287 to successful parties in arbitration even where they had not demanded such interest in their petition to confirm the arbitrator's award. (*Britz*, *supra*, 34 Cal.App.4th at p. 1106.) The court analogized the situation to one where a party's complaint contained no prayer for interest; it reasoned " 'that in a contested action on a money claim which can be made certain by calculation, the matter of interest for the withholding of the money is "embraced within the issue" (Code Civ. Proc., § 580) and the appropriate interest may be allowed even though not prayed for . . . .' " (*Ibid*.)

Additionally the *Britz* court rejected a claim that the award improperly " 'pile[d] "damages" (interest) on top of other "damages" (attorneys' fees and costs) which were themselves awarded on [the successful parties'] modest breach of contract damage claim.' " (*Britz, supra*, 34 Cal.App.4th at pp. 1106-1107.) It explained the argument "misconceives the subject of the superior court petition. The petition was not for an award of damages and attorney fees on the original contracts. That underlying dispute was the subject of the arbitration, and had been concluded by the time of the superior court petition to confirm the award. The arbitration award itself resulted in a new and fixed liability (see Code Civ. Proc., § 1287.6)[14]. *Regardless of the individual elements that comprised that liability*, respondents were entitled to payment of the fixed sum upon issuance of the award." (*Britz,* at p. 1107, italics added.)

---

14    "An award that has not been confirmed or vacated has the same force and effect as a contract in writing between the parties to the arbitration." (Code Civ. Proc., § 1287.6.)

30

C. *Analysis*

The foregoing principles compel us to reject Strata's arguments and uphold the court's award of prejudgment interest.  In his petition to confirm the arbitration award, Shifrin did in fact request interest "at the statutory rate" from April 1, 2024, and his counsel specifically stated Shifrin would seek 10 percent prejudgment interest on the $12,057,614.27 final award, calculated at $3,303.46 daily, from April 9, 2024, through the date of entry of judgment.  Though counsel did not specifically identify Civil Code section 3287 (instead stating the award was sought under Labor Code section 218.6 and Code of Civil Procedure [*sic*] section 3289), Strata was nevertheless on notice that Shifrin sought postaward, prejudgment interest.  Under Civil Code section 3287, subdivision (a), the court lacked discretion to not award such interest where the statutory conditions were met.

Thus, Shifrin's request for postaward, prejudgment interest was not untimely.  But even if he had not asked for such interest in his petition to confirm, under *Britz*, Shifrin could have sought such an award in any event. (*Britz*, *supra*, 34 Cal.App.4th at p. 1106.)  In reply, Strata states that *Britz* is no longer legally sound, based on *Heimlich v. Shivji* (2019) 7 Cal.5th 350, which assertedly "rejected it *sub silencio,*" holding "a court may *not* overrule an arbitrator's decisions in the amount of the award, including prejudgment interest."  The point mischaracterizes *Heimlich*.  There, the arbitrator refused to award costs to a party to an arbitration despite the other party's failure to obtain a more favorable result than an offer made under Code of Civil Procedure section 998.  (*Heimlich*, at pp. 356, 357.)  The California Supreme Court held that even though the party's request for costs was timely (*id.* at pp. 359, 366), the arbitrator's decision, though incorrect, was not reviewable.  (*Id.* at p. 367.)  *Heimlich* pointed out the party seeking costs

31

cited *Britz*, which held arbitrators have power to amend their decisions to add cost and fee awards, but distinguished the case: "[I]f an arbitrator elects *not* to amend a decision in order to add costs or fees, these cases do not hold that a court may overrule that refusal." (*Heimlich*, at p. 368.) *Heimlich* did not overrule *Britz* at all, much less on the issue of when and how a trial court may award postaward, prejudgment interest in an arbitration proceeding under Civil Code section 3287. And this is not a situation where the arbitrator here either granted or denied postaward, prejudgment interest, and the superior court sought to reach a different decision. *Heimlich* does not change our conclusion.

Finally, Strata's complaint about interest upon interest is unavailing. Its cited authority *Westbrook v. Fairchild*, *supra*, 7 Cal.App.4th at p. 894, recognizes an "exception to the rule that interest on interest (i.e. compound interest) may not be recovered is in situations in which interest is included in a judgment which then bears interest at the legal rate." (*Id*. at p. 894.) Such is the case here, where "[t]he arbitration award was the contractual equivalent of a judgment in [Shifrin's] favor." (*Britz*, *supra*, 34 Cal.App.4th at p. 1107.) *Britz* reasoned: "In the context of a judicial judgment, it is clear that interest after judgment accrues as to the entire award, including attorneys' fees. [Citation.] The prejudgment interest awarded respondents served the same purpose here. Although the interest was pre-'judicial judgment', it was post-'contractual judgment.' Any result that denied respondents this postaward interest would punish them for using arbitration instead of the court system to resolve their dispute with appellants." (*Ibid*.)

## DISPOSITION

The judgment is affirmed.  Shifrin shall recover his costs on appeal.


                                        O'ROURKE, Acting P. J.

WE CONCUR:


DO, J.


CASTILLO, J.